UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHRISTOPHER MURAD, ET AL.,<br><br>  Defendants.<br>_____/ | No. C-06-1304 SBA (JCS)<br><br>**REPORT & RECOMMENDATION RE MOTIONS FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br>**[Docket Nos. 173, 183, 192]** |

## I. INTRODUCTION

On Friday, December 8, 2006, at 9:30 a.m., a hearing was held on three motions for default judgment brought by the United States against various trailer owners who are alleged to be wrongfully occupying mobile home spaces at Lake Berryessa Federal Recreation Area ("Lake Berryessa").[1] The United States seeks injunctive relief requiring Defendants to vacate the property and remove all personal property from the spaces they have been occupying. The United States also requests awards of money damages in the form of unpaid rent or the market value of the Defendants' unlawful occupation. For the reasons stated below, it is recommended that the Motions be GRANTED.

---

[1] Previously, seven default judgment motions were referred to the undersigned magistrate judge (Docket Numbers 152, 173, 178, 183, 192, 196, and 202). Prior to the hearing, however, four of the motions were withdrawn (Docket Numbers 152, 178, 196, and 202) after those Defendants removed their property from Lake Berryessa.

## II. BACKGROUND

### A. General Background[2]

The United States has owned Lake Berryessa since the 1950s. Lucero Decl. (Bottarini), ¶ 2. Under the Reclamation Development Act of 1974, the Secretary of the Interior was authorized to develop, operate and maintain recreational facilities at Lake Berryessa. *Id.*, ¶ 3. Pursuant to that authority, the Department of Interior's Bureau of Reclamation ("Reclamation") administers concession agreements with concessionaires who operate resorts along the shoreline of Lake Berryessa. *Id.* The concessionaires, in turn, are authorized to rent spaces to private owners of mobile homes and trailers. *Id.* Neither the concessionaires nor, by extension, the renters, acquire any estate in land or other rights to real property. *Id.*

One of the resorts operated by a concessionaire is Pleasure Cove Marina ("PCM"). *Id.*, ¶ 1. No later than April 2001, Richard and Judith DeLooze operated the PCM concession. *See* Declaration of Pedro Lucero in Support of Default Against Karl Peterson and Ulrike Morrison ("Lucero Decl. (Peterson/Morrison)"), ¶ 4. The DeLoozes granted permits to all of the Defendants in this action against whom the United States seeks default judgment except Robert Petty and Ulrike Morrison.[3] These permits were month-to-month and were renewable so long as the permittees observed "all applicable laws and all Terms and Conditions" of the agreement. Lucero Decl. (Bottarini), Ex. 1 (DeLooze Permit Agreement).

On April 15, 2004, the DeLoozes' concession was terminated because the DeLoozes died and no one was willing to assume management of the concession on behalf of the DeLooze estate. *Id.*, ¶ 5 n.1. On May 20, 2004, Reclamation entered into an interim concession agreement with Pleasure

---

[2] The general background that is relevant to all Defendants is set forth in virtually identical form in declarations by Park Manager Pedro Lucero filed in support of each motion. For convenience, the Court cites to only one of these declarations in this section, the Declaration of Pedro Lucero in Support of Default Judgment Against Alan Bottarini and Carole Bottarini (hereinafter, "Lucero Decl. (Bottarini)") unless otherwise indicated.

[3] With the exception of Petty, the specific facts relating to these agreements are set forth in Paragraph 4 of the Lucero declaration filed in support of each of the motions.

Cove Resort Asset Management Group ("PCRAMG"), to administer the concession until December 31, 2005. *Id*., ¶ 5.[4] Under the interim concession agreement, PCRAMG was required to enter into new rental agreements with all trailer owners who had permits at that time. *Id*. These agreements stated that the concession agreement expired on December 31, 2005, that a decision had been made on the future of long-term site rentals, and that unless otherwise directed by the Bureau of Reclamation, all long-term trailer use would end on November 1, 2005. *Id*., Ex. 2 (PCRAMG Rental Agreement). During the interim, permittees would continue to pay rent at the rate set forth in their previous rental agreements.[5] The new rental agreement also required that renters post a $10,000 clean-up bond, which would be forfeited if all personal property was not removed from the site by December 31, 2005.[6] *Id*. With the exception of Petty, all of the Defendants against whom default judgment is sought entered into the new rental agreements with PCRAMG.[7]

On March 28, 2005, the interim concession agreement with PCRAMG was terminated on the basis that PCRAMG had failed to meet certain obligations under the agreement. *Id*., Ex. 3 (March 28, 2005 Letter Notice). Those holding trailer permits were instructed in a letter dated March 28, 2005, that if they had already submitted clean-up bonds, they would be permitted to remain until December 15, 2005, so long as they entered into agreements with the new concessionaire, once it was selected. *Id*. Those who had not submitted clean-up bonds already were to remove all personal property from their sites by May 11, 2005. *Id*. The letter also explained that pending appointment of a new concessionaire, PCM would be closed. *Id*. The letter carried a heading "CERTIFIED – RETURN RECEIPT REQUESTED." *Id*.

---

[4] Although Lucero describes the contents of the agreement between PCRAMG and Reclamation, the actual agreement is not in the record.

[5] The new agreements stated that "all previous use permits are void, this addendum and your old use permit will qualify as your new use permit." Lucero Decl. (Wheeler), Ex. 2. At oral argument, counsel for Plaintiff confirmed that this language meant that rent remained the same under the new agreement as that set forth in the earlier agreement.

[6] At oral argument, Plaintiff's counsel stated that to the extent any of the Defendants posted clean-up bonds, all of those bonds have now expired.

[7] With the exception of Petty, these rental agreements are Exhibit 2 to the Lucero declaration filed in support of each of the motions

3

On June 1, 2005, a new concession agreement between Reclamation and Forever Resorts went into effect. *Id*., ¶ 8. Forever Resorts developed a Site Rental Agreement allowing trailer owners to rent on a month-to-month basis from June 1, 2005, to November 1, 2005. *Id*. This Site Rental Agreement was sent to trailer owners on September 7, 2005, along with a letter instructing them that they would be required to sign the new agreements and pay all unpaid rent by September 19, 2006. *Id*., Ex. 4.[8] The letter explained that "[w]hile closed, no rent was required from the permittees as no access for recreation was granted." *Id*. The September 7, 2005 letter, like the earlier notice, carried the heading "CERTIFIED – RETURN RECEIPT REQUESTED." None of the Defendants against whom the United States seeks default judgment signed a Site Rental Agreement or responded to the September 7, 2005 Letter.

**B.     Individual Defendants**

**1.     Alan and Carole Bottarini**

In May 2001, Alan and Carole Bottarini entered into an agreement with concessionaires Richard and Judith DeLooze for use of Site 81 in PCM. Lucero Decl. (Bottarini), Ex. 1. The Bottarinis agreed to pay $375 per month in rent. *Id*. On June 14, 2004, the Bottarinis entered into a new agreement with PCRAMG. *Id*., Ex. 2. On March 28, 2005, the Bottarinis were sent the letter notice discussed above, notifying them they would be required to enter into a new agreement with whatever concessionaire was appointed to replace PCRAMG. *Id*., Ex. 3. Apparently, the letter was sent to 873 Clearfield Drive, Vallejo, CA 94590. *Id*. It is not clear from the record that the Bottarinis received this letter. In particular, no return receipt was provided by the United States and a list of recipients listing the above address for the Bottarinis carries a notation "no such street – returned" next to the Bottarini's address. *Id*.

On September 7, 2005, the Bottarinis were sent the letter discussed above regarding the requirement that they pay all unpaid rent and sign the new Site Rental Agreement, along with a copy of the March 28, 2005 letter. *Id*., Ex. 4. In contrast to an almost identical the letter sent to

---

[8] For all Defendants except Petty, the September 7, 2005 Letter is attached to the Lucero declarations as Exhibit 4. For Petty, the September 7 Letter is attached as Exhibit 2.

4

Defendants Morrison and Peterson on the same date, this letter was not specifically addressed to the Bottarinis, but rather began "Dear (Trailer Owner)." *Id*. This letter was sent to 873 Clearfield Drive, *Millbrae*, CA 94030. *Id*. This is the address provided by the Bottarinis for notice in their May 2001 Agreement, and the address at which they were served in this Court. Again, there is no return receipt in the record.[9]

On October 26, 2005, the Bottarinis were sent a follow-up letter stating that their use permit would expire on November 1, 2005, and that all personal property was to be removed by December 15, 2005. *Id*., Ex. 5. This letter was sent to the Millbrae address listed above. *Id*. Again, no return receipt is provided.

According to the Lucero Declaration, the Bottarinis also received a notice dated December 15, 2005, reminding them that all of their personal property was to be removed from the site by that day. *Id*., ¶ 10. Although the Lucero Declaration states that that letter is attached as Exhibit 6, no such letter was provided and there is no Exhibit 6 to the declaration.

The Bottarinis have continued to occupy the site and use utilities to the present. *Id*, ¶ 11. They have not paid rent or for their utility services since June 1, 2005. *Id*.

### 2. Robert Petty

At the time of the termination of the PCRAMG concession, Petty was "considered to be an employee of the resort." Declaration of Pedro Lucero in Support of Default Judgment Against Robert Petty ("Lucero Decl. (Petty)"), ¶ 5. Petty asked Lucero for permission to stay on at the resort and Lucero agreed "on the condition that Petty provide a bond, cease use on November 1, 2005, and remove his property by December 15, 2005." *Id*. Petty provided the bond, which expired on December 31, 2005. *Id*. & Ex. 1.

On September 7, 2005, Petty was sent the letter described above, including a new rental agreement. *Id*., Ex. 2. The letter was specifically addressed to Petty. *Id*. No return receipt was provided.

---

[9] The Court notes that the summons lists another address: 8873 Clearfield Drive, Millbrae, CA 94030. However, the attached proof of service states that the Bottarinis were served at 873 Clearfield Drive, Millbrae CA 94030.

5

On October 27, 2005, Petty was sent the letter described above reminding that he could not use the property after November 1, 2005 and that all of his property had to be removed by December 15, 2005. *Id*. Again, no return receipt was provided, but the letter was directly addressed to Petty.

On December 15, 2005, Petty was sent a letter notice informing him that he was required to have removed his personal property from the site by that date. *Id*., Ex. 4.

Petty has not removed his property from his site and has not paid any rent on the site. *Id*., ¶ 10.

### 3. Karl Peterson and Ulrike Morrison

According to Lucero, Peterson and Morrison entered into an agreement with Richard and Judith DeLooze in April 2001 for use of Site 41 in PCM. Lucero Decl. (Peterson/Morrison), ¶ 4. The attached agreement, however, lists only Karl Peterson. *Id*., Ex. 1. Peterson agreed to pay $375 per month in rent. *Id*. On June 15, 2004, Karl Peterson entered into a new agreement with PCRAMG. *Id*., Ex. 2. Again, Ulrike Morrison's name is not listed on the agreement.

On March 28, 2005, the letter notice discussed above was, according to Lucero, sent to Peterson and Morrison. *Id*., ¶ 7 & Ex. 3. The list of recipients attached to the letter, however, lists only Karl Peterson. *Id*. Ulrike Morrison is not listed. *Id*. No return receipt is provided. The letter to Peterson appears to have been sent to 3233 Archwood Lane, Sacramento, CA 95821. *Id*.

On September 7, 2005, the letter discussed above was sent to Ulrike Morrison and Karl and Shannon Peterson – all at the Sacramento address listed above. *Id*., Ex. 4. No return receipt is provided. There is no evidence that any further notices were sent to these Defendants.

According to Lucero, Peterson and Morrison continue to occupy the site and use utilities, and they have not paid utilities since August 1, 2005. *Id*., ¶ 9.

### C. Procedural Background

The Complaint in this action was filed on February 22, 2006. The United States named numerous Defendants, most of whom were subsequently dismissed after they removed their trailers from Lake Berryessa. The Complaint alleges that all of the Defendants entered into written agreements with Mr. DeLooze and subsequently, with PCRAMG. Complaint at 4. It further alleges that all of the Defendants refused to enter into agreements with Forever Resorts, have refused to

compensate Forever Resorts since June 1, 2005, and continue to occupy spaces at Lake Berryessa. *Id*. On the basis of these allegations, the United States asserts claims for: 1) ejectment, and 2) trespass. *Id*. at 5. With respect to the ejectment claim, the United States seeks an order allowing it to eject the Defendants and enjoin their future occupancy of the land without authorization. *Id*. As to the trespass claim, the United States seeks injunctive relief in the form of an order requiring Defendants to remove all personal property from the land and clean up any debris. *Id*. at 6. In addition, the United States seeks an award of monetary damages equal to the fair market value of the land for the entire period of the unlawful occupancy. *Id*. Finally, the United States requests an award of all costs to be incurred in enforcing its right to possession and in restoring and cleaning up the land. *Id*. at 7.

The Complaint was served and Defendants Allen and Carole Bottarini, Robert Petty, Karl Peterson, and Ulrike Morrison, among others, failed to respond. The Clerk entered default as to Robert Petty on August 3, 2006. The Clerk entered default as to the Bottarinis, Karl Peterson, and Ulrike Morrison on August 4, 2006. The United States now seeks entry of default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and requests both injunctive relief and money damages.

**III.   ANALYSIS**

   **A.   Legal Standard for Awarding Default Judgment**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55; *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). However, a defendant's default does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956) (affirming district court's denial of default judgment). The court may consider the following factors (known as the *Eitel* factors) in deciding whether to enter a default judgment:

7

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the Plaintiffs' substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id.* Well-pleaded allegations of the complaint are taken as true for purposes of default judgment. *Discovery Comm'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001). Damages or other forms of relief are constrained by the rule that "judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c).

### B. Excusable Neglect

There is no evidence in the record that the Defendants failed to respond to the Complaint as a result of excusable neglect. Rather, the evidence shows that all of the Defendants were served with the complaint and that prior to serving the complaint, the United States notified Defendants of the need to vacate the property by December 15, 2005, on more than one occasion. Therefore, the Court concludes that entry of default judgment is appropriate so long as the allegations are well-pleaded and the substantive evidence does not indicate that entry of default judgment might not be appropriate.

### C. The Claims

#### 1. Ejectment

The United States seeks entry of default judgment on its claim for ejectment. Under California law, ejectment is warranted when a plaintiff shows: 1) a right to possession, and

2) wrongful possession on the part of the defendant.[10] *U.S. v. Santos*, 878 F. Supp. 1359, 1363 (D. Guam 1993) (citing *Baugh v. Consumers Assoc., Ltd.*, 241 Cal. App. 2d 672, 675 (1st Cir. 1966)). If the plaintiff's title to the property is not in dispute, the plaintiff is "entitled to ejectment of defendant from the property as a matter of law." *U.S. v. Hilliard*, 1995 U.S. Dist. LEXIS 4637 at *2 (N.D. Cal 1995). In this case, the allegations in the complaint, as well as the evidence provided in the Lucero Declaration, establish that the United States owns the land at issue and that it is currently in wrongful possession of Defendants Robert Petty, Alan and Carole Bottarini, and Karl Peterson. As to these Defendants, default judgment should be entered on the ejectment claim.

Regarding Ulrike Morrison, the Court must address whether default judgment should be granted on this claim, given that her name does not appear on either the DeLooze site agreement or the PCRAMG agreement, contrary to the allegations in the complaint. The Court concludes that it should. A claim for ejectment does not require a contractual relationship, but merely that the defendant be in wrongful possession of the plaintiff's property. Plaintiff has alleged that Morrison is in wrongful possession and has presented evidence, in the form of the Lucero declaration, that Morrison continues to occupy the property. Therefore, Plaintiff is entitled to default judgment on its ejectment claim as to Morrison as well as the other Defendants.

### 2. Trespass

The United States also seeks entry of default judgment on its trespass claim. Trespass is defined as "the intentional use of the property of another without authorization and without

---

[10] Federal courts deciding a state claim apply state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). The federal court applies the choice of law rules of the state in which it sits. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Under California choice of law rules, if there is no conflict of law, the law of the forum is applied. *Nestle U.S.A. v. Travelers Cas. & Sur. Co.*, 1998 U.S. Dist. LEXIS 17287 at *6 (D. Cal. 1998). In this case, there does not appear to be a conflict of law issue, since all the events giving rise to this cause of action occurred in California. Therefore, California law should be applied. *See Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc*., 14 Cal. App. 4th 637, 646 (Cal. App. 4th Dist. 1993) (citing Restatement 2d of Conflict of Laws § 188 (1971)) (holding that in a contract issue with no conflict of law, the court considers the place of contracting, negotiation and performance of the contract; the location of the subject matter of the contract; and the place of business of the parties when determining whether California law should be applied); *see also Wiener v. United Air Lines*, 237 F. Supp. 90, 93 (9th Cir. 1964) (citing *Loranger v. Nadeau*, 215 Cal. 362, 366 (Cal. 1932)) (affirming that an action in tort is governed by the law of the jurisdiction where the tort was committed).

privilege." *U.S. v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1059 (S.D. Cal. 1992) (citing W. Page Keeton et al., *Prosser and Keaton on the Law of Torts* § 13 at 70 (5th ed., 1984)). The allegations and the evidence establish that all of the Defendants against whom default judgment is sought have been and continue to occupy spaces at Lake Berryessa without authorization. Therefore, default judgment should be entered against them on this claim.

**D.     Remedy**

    **1.     Injunctive Relief**

The United States seeks injunctive relief requiring that: 1) Defendants vacate the property within five days of entry of default judgment against them; 2) they remove all personal property from the spaces and clean up any debris within the same period; 3) they refrain from committing any waste on the property; and 4) they be enjoined from occupying any real property at Lake Berryessa without written authorization from the United States. It is recommended that this relief be granted.

The standard for granting a permanent injunction mandates that the U.S. show "a real or immediate threat of substantial or irreparable injury." *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th Cir. 2001). The test for injunctive relief is met in this case. The injury to the United States is substantial if Defendants remain on the property because the United States will be unable to utilize the property as the rightful owner. *See U.S. v. Santos*, 878 F. Supp. at 1363 (holding that injunctive relief was warranted when trespasser failed to vacate government property in order to protect the integrity and insure the order and safety of U.S. property); *U.S. v. Triple A Machine Shop, Inc.*, 857 F.2d 579, 580 (9th Cir. 1988) (affirming entry of a permanent injunction in an ejectment action by the U.S. where a previous tenant remained on property after the lease expired); *Conner v. U.S. Dept. of Interior*, 73 F. Supp. 2d 1215, 1220 (D. Nev. 1999) (holding that U.S. was entitled to injunctive relief to stop plaintiffs' continuing trespass where plaintiffs occupied government land without authorization). Therefore, the requested injunctive relief should be granted.

### 2. Damages

The measure of damages in trespass actions is the "value of the use of the property for the time of such [wrongful] occupation." *Samuels v. Singer*, 1 Cal. App. 2d 545, 553 (Cal. App. 2d Dist. 1934) (citing Cal. Civ. Code § 3334 (2004)); *see also Hammond v. County of Madera*, 859 F.2d 797, 804 (9th Cir. 1988) (holding that in trespass actions, damages are measured in trespass by the "amount of reasonable rental value of the subject premises"). The value of the use and occupation of the property can be based on the previous rental rate, or on a "proven reasonable value independently established if that differs from the previous rental rate." Restatement (Second) of Property § 14.5 (1977); *see, e.g., Harris v. Bissell*, 54 Cal. App. 307, 312-13 (Cal. App. 3d Dist. 1921) (holding that where the holdover tenant has only partial use of the leased property, the rental value can be "greater or less than the rent provided for in the lease").

#### a. The Bottarinis

The United States seeks to recover $375 per month for every month since June 1, 2005, that they have occupied the space at Lake Berryessa, giving rise to damages in the amount of $6,750 as of December 1, 2006. Lucero Decl. (Bottarini), ¶¶ 11-13. This amount should be awarded in full. The Bottarini's paid $375 per month in rent for the space until they stopped paying rent altogether. *Id.*, ¶ 13. Therefore, this rental rate is presumptively reasonable. Further, June 1, 2005, is an appropriate date to start the calculation as that is the date when the Bottarinis were required to enter into an agreement with Forever Resorts but failed to do so. *Id.*, ¶ 11.

#### b. Robert Petty

The United States seeks to recover $450 per month for every month since December 1, 2005, that Petty has occupied the space at Lake Berryessa, giving rise to damages in the amount of $5,400 as of December 1, 2006. Lucero Decl. (Petty), ¶ 12. The Court recommends awarding rent at the rate of $450 per month, as requested by Plaintiff. Although apparently Petty did not pay rent, others who rented spaces at PCM in 2002 and later where charged $450 per month, and Lucero has stated that this was the fair market value of use of the space. *Id*. The Court however, recommends adjusting the starting date for the calculation from December 1, 2005 – the date requested by Plaintiff – to December 15, 2005. That is the date by which Petty was to have removed all

possessions from the site, according to Lucero. Therefore, it is recommended that the Court award $5,175 in damages against Defendant Petty.

### c. Karl Peterson and Ulrike Morrison

The United States seeks to recover $375 per month for every month since August 1, 2005, that they have occupied the space at Lake Berryessa, giving rise to damages in the amount of $6,000 as of December 1, 2006. Lucero Decl. (Peterson/Morrison), ¶ 11. This amount should be awarded in full. The evidence shows that until he stopped paying rent, Peterson paid $375 per month in rent for the space. *Id*. Therefore, this rental rate is presumptively reasonable. Further, August 1, 2005, is an appropriate date to start the calculation as that is the date when Peterson stopped paying rent for the site. *Id*., ¶ 9.

### 3. Cost of Removal

The United States seeks to recover any costs incurred in the removal of Defendants' property by the United States Marshal's Service. Generally, the costs of removal may be awarded, pursuant to 28 U.S.C. § 1921. If such costs are incurred, the United States may bring a motion to recover those costs.

## IV. CONCLUSION

The Motions for Default Judgment should be GRANTED. Default Judgment should be entered as to Defendants Alan and Carole Bottarini, Robert Petty, Karl Peterson, and Ulrike Morrison, who should be ordered to: 1) vacate the sites at Lake Berryessa that they have been occupying, and continue to wrongfully occupy, within five (5) days of the entry of default judgment, and 2) remove all personal property within the same time period. It is further recommended that Defendants be ordered to remove all debris and clean up the property within the same period. They also should be permanently enjoined from occupying any real property at Lake Berryessa in the future without the written authorization of the United States or the current concessionaire. Damages should be awarded in the amounts stated above. Plaintiff should be awarded the costs of removal,to be established by motion after those costs have been incurred.

Dated: December 20, 2006

JOSEPH C. SPERO
United States Magistrate Judge